**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 24-cv-80653-ALTMAN**

**AVENS LEMIEUX**,

     *Plaintiff,*

*v.*

**JOSEPH BANGO**, *et al.*,

     *Defendants.*

_____/

## ORDER

In this civil-rights complaint under 42 U.S.C. § 1983, our Plaintiff, Avens Lemieux, alleges that four West Palm Beach police officers—Joseph Bango, "Agent Ward," "Agent Louis," and "Agent Birch"—illegally searched him and seized his property during a June 4, 2021 traffic stop at a Ramada Inn. *See* Amended Complaint [ECF No. 5] at 4–5. After reviewing Lemieux's allegations, we'll **DISMISS** one claim without prejudice and allow the Amended Complaint to **PROCEED** on the remaining three.

### THE FACTUAL ALLEGATIONS

On the night of June 4, 2021, Lemieux and three passengers—including his thirteen-year-old son—"entered the Ramada Hotel parking lot . . . where [Lemieux] was a guest meeting family." Amended Complaint ¶ A.1. While Lemieux was looking for a place to park, his car was "blocked off" by the Defendants' vehicles, "bright flood style lights were activated," and the Defendants "jumped out with weapons drawn, screaming and cursing at [Lemieux] and [the] passengers." *Id.* ¶¶ A.3–A.5. All the occupants of the vehicle were "patted down and searched" by the officers and Lemieux was handcuffed. *Id.* ¶¶ A.6–A.7. Defendants Ward, Birch, and Bango "began to search [Lemieux's] vehicle without [his] consent" and did not even try "asking for [his] permission or consent to search [his]

vehicle or personal property." *Id.* ¶ A.9. Lemieux told the Defendants that he "was not in possession of anything illegal in [his] vehicle or [on his] person" and that his car only "contained [his] 'medically prescribed flowers' with receipt of purchase and proof of prescription." *Id.* ¶ A.11.

The Defendants conducted a "complete search of the vehicle and personal bags of property [and] came up with nothing illegal." *Id.* ¶ A.14. Lemieux tried to ask the Defendants why they stopped (and were now searching) his vehicle, but the Defendants insisted that "it was just a regular traffic stop." *Id.* ¶ A.12. After Defendant Bango "jumped on his cell phone and made a brief call," Defendants Ward, Birch, and Bango conducted *another* search of Lemieux's vehicle that came up empty. *Id.* ¶¶ A.14, A.16. Those same three Defendants then "huddled up and made another phone call." *Id.* ¶ A.16.

After this second phone call, Defendants Ward and Birch approached Lemieux and "separated [him] from the passengers of [his] vehicle." *Id.* ¶ A.17. When Lemieux asked "if something was wrong, and was [he] being taken to jail," Defendants Ward and Birch said "no," pointed at Lemieux's "crotch," and explained that "[w]e're going in there." *Id.* ¶ A.18. Lemieux, who was still handcuffed, was restrained by Defendant Birch against the side of his vehicle while "Ward start[ed] to unfasten my pants and pull them down." *Id.* ¶ A.20. During this strip search, Ward first "lift[ed] and move[d] [Lemieux's] testicles and penis around while shining [a] light in [Lemieux's] crotch area," and then Birch "pushed" Lemieux over so that Ward could "spread [Lemieux's] butt cheeks" and conduct a search of the anal cavity. *Id.* ¶¶ A.21–A.23. This search was interrupted by Bango, who told Ward and Birch that "we gotta go" after noticing that Lemieux's sister had started to record the encounter. *Id.* ¶ A.24. The Defendants quickly pulled up Lemieux's pants, uncuffed Lemieux, and "quickly dispersed without issuing [Lemieux] any ticket or citation." *Id.* ¶¶ A.25–A.26. After Lemieux noticed that his "medical flowers" were missing from his vehicle, Lemieux's son "said he witnessed Officer Bango remove them from my vehicle[.]" *Id.* ¶ A.27.

## THE LAW

The Court "*shall* review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A (emphasis added). The definition of a "prisoner" includes "any person incarcerated or detained in any facility who is . . . accused of [or] convicted of . . . violations of criminal law." *Id.* §1915A(c). In conducting its screening of a prisoner's complaint, the Court must "dismiss the complaint, or any portion of the complaint," when it is: (1) "frivolous, malicious, or fails to state a claim upon which relief may be granted"; or (2) "seeks monetary relief from a defendant who is immune from such relief." *Id.* § 1915A(b).

To state a claim upon which relief may be granted, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level"—with "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Under this standard, legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Moreover, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (cleaned up).

## ANALYSIS

Lemieux asserts four claims against the Defendants—two for the "unreasonable search[es]" and two for the "unreasonable seizure[s]." *See* Amended Complaint at 8–9. In the first count, Lemieux claims that all four Defendants "violated my [Fourth] Amendment right by searching my vehicle and personal property without probable cause or consent during what was supposed to be a routine traffic stop." *Id.* ¶ B.1. In the second, Lemieux says that Defendants Ward and Birch "violated me" by performing "an unreasonable strip search" and "touching my private parts." *Id.* ¶¶ B.3–B.4. In the

3

third, Lemieux alleges that Defendant Bango violated the Fourth Amendment by "unreasonably seizing my prescription medication without informing me and without leaving me with any reciept or proof of items siezed[.]" *Id.* ¶ C.1 (errors in original). In the fourth, Lemieux contends that all four Defendants unreasonably seized him when he was "pulled over at gunpoint" and then "handcuffed and arrested" during a supposedly "routine traffic stop." *Id.* ¶ C.2. We'll address these claims in order.

A.      **Illegal Search of Lemieux's Vehicle**

We begin with Lemieux's claim that all four Defendants violated the Fourth Amendment "by searching my vehicle and personal property without probable cause or consent[.]" *Id.* ¶ B.1. To state an illegal-search claim under § 1983, Lemieux must show that the Defendants conducted an "unreasonable" search in violation of the Fourth Amendment. *See Lenz v. Winburn*, 51 F.3d 1540, 1551 (11th Cir. 1995) ("The Fourth Amendment prohibits only unreasonable searches[.]"). In the context of a traffic stop, a law enforcement officer who *doesn't* arrest the driver or passenger of a car may conduct a warrantless search of a vehicle in one of two scenarios. *First*, the officer "may request consent to search the vehicle." *United States v. Purcell*, 236 F.3d 1274, 1281 (11th Cir. 2001) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973)). *Second*, the officer may conduct a warrantless search of the vehicle if—during the traffic stop—he or she acquires "probable cause to believe the vehicle contains evidence of a crime." *United States v. Tamari*, 454 F.3d 1259, 1264 (11th Cir. 2006); *see also United States v. Lindsey*, 482 F.3d 1285, 1293 (11th Cir. 2007) ("The automobile exception [to the Fourth Amendment] allows the police to conduct a search of a vehicle if (1) the vehicle is readily mobile; and (2) the police have probable cause for the search.").

Neither of these exceptions applies here. Lemieux says that he did not consent to the search. In fact, he alleges that the Defendants never even "ask[ed] for [his] permission or consent to search [his] vehicle or personal property." Amended Complaint ¶ A.9. Lemieux also alleges that the Defendants lacked probable cause to search his vehicle because they had no evidence that Lemieux

(or anyone else in the vehicle) had engaged in any criminal activity. *See id.* ¶ B.2 ("I was not witnessed by any officers committing any type of crimes."). Indeed, Lemieux repeatedly insisted to the Defendants that he "was not in any possession of anything illegal" and that he "was with [his] child." *Id.* ¶¶ A.11, A.15.[1] Since Lemieux has alleged that Defendants Bango, Ward, and Birch searched his vehicle (and the "personal bags and property" inside the vehicle) without his consent and without probable cause, he's plausibly alleged that these three Defendants violated his Fourth Amendment rights.

We come out the other way, however, on Defendant Louis. Although Lemieux says that each of the Defendants (including Louis), violated the Fourth Amendment "by searching my vehicle and personal property," *id.* ¶ B.1, his own recitation of the facts does not support this conclusion. Lemieux, in fact, twice alleges that *only* Defendants Bango, Ward, and Birch searched his vehicle and property. *See id.* ¶ A.9 ("At this point Agent Ward, Agent Birch, and Joseph Bango began to search my vehicle without my consent[.]"); *id.* ¶ A.16 ("After another search of my vehicle came back empty Officers Ward, Birch, and Bango huddled up and made another phone call."). Although Defendant Louis was in the vicinity of the search, Lemieux makes it clear that Louis's sole task was to watch him and the other passengers during the search. *See id.* ¶ A.8 ("My passengers and I were then taken away from the immediate vicinity of the vehicle and were ordered to sit on the floor . . . under the custody of Agent Louis."). Since Louis never searched Lemieux's vehicle, he cannot be liable for violating Lemieux's Fourth Amendment rights. *See Holland v. City of Auburn, Ala.*, 657 F. App'x 899, 904–05 (11th Cir.

---

[1] Lemieux did admit that he was in possession of "medically prescribed flowers." Amended Complaint ¶ A.11. But, even if we assume that this vague statement gave the Defendants probable cause to search for controlled substances, Lemieux's admission came *after* the Defendants began to search the vehicle. *See ibid.* In other words, the facts alleged in the Amended Complaint still indicate that the Defendants lacked probable cause *when they began* their search. And that's the moment that matters. *See New Jersey v. T.L.O.*, 469 U.S. 325, 340 (1985) ("Ordinarily, a search—even one that may permissibly be carried out without a warrant—must be based upon 'probable cause' to believe that a violation of the law *has* occurred." (emphasis added)).

2016) ("Plaintiff does not allege that Detective Creighton was involved with the vehicular search . . . . Because Plaintiff has failed to provide any sort of factual connection between Detective Creighton's actions and the search of his car, the district court properly dismissed the claim."); *see also Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 737 (11th Cir. 2010) ("To establish § 1983 liability, a plaintiff must show proof of an affirmative causal connection between a government actor's acts or omissions and the alleged constitutional violation[.]" (cleaned up)).

We'll therefore allow Lemieux's illegal-search claim to **PROCEED** against Defendants Bango, Ward, and Birch, but we **DISMISS without prejudice** that same claim as to Defendant Louis.

### B.    Illegal Strip Search

Next, Lemieux asserts a second illegal-search claim against Defendants Ward and Birch for the (allegedly) unreasonable and unnecessary strip search. *See* Amended Complaint ¶ B.3. A strip search "absent particularized suspicion [is] unconstitutional[.]" *Thomas ex rel. Thomas v. Roberts*, 323 F.3d 950, 956 (11th Cir. 2003); *see also Kastritis v. City of Daytona Beach Shores*, 835 F. Supp. 2d 1200, 1216 (M.D. Fla. 2011) (Scriven, J.) ("Under the law, a law enforcement officer may subject an individual to a strip search only upon a particularized showing of probable cause that would justify 'going beyond a search of the outer clothing and belongings.'" (quoting *Safford United Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 374 (2009))).

Having carefully reviewed Lemieux's allegations, we cannot say that Defendants Ward and Birch had a sufficiently "particularized suspicion" to strip search Lemieux. The officers *twice* searched Lemieux's vehicle (and the personal items in it) and found, in Lemieux's words, "nothing illegal[.]" Amended Complaint ¶ A.14. Since there was no reason to suspect that Lemieux was hiding contraband in or around his "private parts" after searching his vehicle, *id.* ¶ B.4, Lemieux has plausibly alleged that Ward and Birch's decision to strip search him was unreasonable under the Fourth Amendment, *see, e.g., Evans v. Stephens*, 407 F.3d 1272, 1280 (11th Cir. 2005) ("Officer Stephens searched Plaintiffs' car

for over ten minutes, and . . . found nothing about drugs. In addition, Stephens searched the area surrounding the car and found nothing about drugs. . . . This lack of revealed evidence undermines the reasonableness of Officer Stephens's belief that Plaintiffs possessed drugs. Thus, we decide, bearing all the circumstances in mind, that Officer Stephens violated Plaintiffs' right to be free from an unreasonable search when he performed an investigatory strip search for drugs [since] he was without the necessary reasonable suspicion that Plaintiffs . . . had drugs[.]" (cleaned up)); *D.H. by Dawson v. Clayton Cnty. Sch. Dist.*, 830 F.3d 1306, 1317 (11th Cir. 2016) (holding that an officer's decision to "remove all of [D.H.'s] underclothing in front of D.H.'s peers bore no rational relationship to the purpose of the search itself").

This second claim, therefore, shall **PROCEED** to service.

## C.      Seizure of Property

Lemieux also accuses Defendant Bango of seizing his "prescription medication" without "probable cause" and without telling Lemieux that his medication had been taken. Amended Complaint ¶ C.1. A police officer violates the Fourth Amendment when he seizes a person's property *either* without probable cause *or* in an otherwise unreasonable manner. *See Case v. Eslinger*, 555 F.3d 1317, 1330 (11th Cir. 2009) ("Case argues that the retention of his seized property violated the Fourth Amendment, but we disagree because Officer Davis had probable cause to seize Case's property. . . . [W]e [previously] explained that, if an initial seizure of property by officers constituted an illegal seizure then 'certainly, the continued retention of that property would be a constitutional violation as well.'" (cleaned up & quoting *Bruce v. Beary*, 498 F.3d 1232, 1248 (11th Cir. 2007))). The "crucial inquiry" for a seizure's legality is whether it was "reasonable under all the circumstances." *United States v. Schandl*,

947 F.2d 462, 465 (11th Cir. 1991) (quoting *United States v. Wuagneux*, 683 F.2d 1343, 1352 (11th Cir. 1982)).[2]

In a vacuum, Lemieux's admission that he possessed "medically prescribed flowers," Amended Complaint ¶ A.11, *might* have given Bango sufficient probable cause to seize the flowers. Although Lemieux is vague about what these "medically prescribed flowers" were, the only reasonable reading of the Amended Complaint is that Lemieux possessed the "dried flowers" of "a plant of the genus *Cannabis*" (*i.e.*, marijuana)—which is a type of "low-THC cannabis" that can be prescribed by doctors in the State of Florida. *See* FLA. STAT. § 381.986(1)(f); *accord Fla. Dep't of Health v. Florigrown, LLC*, 317 So. 3d 1101, 1107 (Fla. 2021) (finding that "section 381.986, [permits] the medical use of 'low-THC cannabis' for certain patients").

But Florida's legalization of medical marijuana didn't repeal certain criminal statutes related to the possession and use of marijuana in other contexts. Florida courts have *repeatedly* held that the presence of low-THC cannabis in a vehicle is sufficient to establish probable cause that the driver may have committed marijuana-related criminal offenses—even if law enforcement officers suspect that the driver is a medical-marijuana user. *See, e.g.*, *Johnson v. State*, 275 So. 3d 800, 802 (Fla. 1st DCA 2019) ("[E]ven if smoking marijuana were legal altogether, the officers would have had probable cause based on the fact that Johnson was operating a car. . . . [T]he *possibility* that a driver might be a medical-marijuana user would not automatically defeat probable cause." (citing FLA. STAT. § 316.193(1)(a))); *State v. Fortin*, 383 So. 3d 820, 824 (Fla. 4th DCA 2024) (holding that "the officer had probable cause to conduct the search" to determine if the defendant's marijuana complied "with the statutory requirements concerning medical marijuana packaging," even though "the defendant had advised the

---

[2] Lemieux's illegal-seizure claim under the Fourth Amendment is distinct from "[a] complaint of continued retention of *legally seized property* [which] raises an issue of procedural due process under the Fourteenth Amendment[.]" *Case*, 555 F.3d at 1330 (emphasis added).

officer he had a medical marijuana card prior to the vehicle search" (citing FLA. STAT. § 381.986(14)(a))).

But, as we've said, Lemieux's admission came *after* the Defendants (including Bango) began to search his vehicle—allegedly without probable cause. *See ante*, at 5 n.1. A law enforcement officer may only seize "incriminating evidence or contraband when it is discovered *in a place where the officer has a right to be*." *Washington v. Chrisman*, 455 U.S. 1, 6 (1982) (emphasis added) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 465 (1971)); *see also United States v. Rodgers*, 924 F.2d 219, 221 (11th Cir. 1991) ("The officers, therefore, can seize the contraband only if they can gain access to it under some prior Fourth Amendment justification." (citing *Texas v. Brown*, 460 U.S. 730, 738 (1983) (Rehnquist, J., plurality, op.))); *United States v. Ochoa*, 402 F. App'x 478, 484 (11th Cir. 2010) ("The plain-view doctrine permits a warrantless seizure where the officer is lawfully located in the place from which the seized object could be plainly viewed and has a lawful right of access to the object itself.").

Put another away, Bango's post-hoc acquisition of probable cause (by way of Lemieux's admission that there were "medically prescribed flowers" in his vehicle) didn't justify the officers' seizure of those "flowers" from Lemieux's vehicle, because the Defendants lacked a "prior Fourth Amendment justification" to search the car in the first place. *Rodgers*, 924 F.2d at 221; *cf. United States v. Ladson*, 774 F.2d 436, 439 (11th Cir. 1985) (affirming suppression of seized evidence as "fruit of the poisonous tree" where "Agent Markonni's initial entry into the defendants' home" was unlawful). Although this is a much closer call than the others, at this screening phase of the case, we must construe all facts (and resolve all reasonable inferences) in Lemieux's favor. Viewing the Amended Complaint that way, we'll allow this claim to **PROCEED**.

### D.     False Arrest

Finally, Lemieux claims that all four Defendants falsely arrested and seized him when he was "pulled over at gunpoint," removed from his vehicle, and handcuffed. Amended Complaint ¶ C.2. These actions, while perhaps excessive, did not violate Lemieux's constitutional rights.

"An arrest without a warrant and lacking probable cause violates the Constitution and can underpin a § 1983 claim[.]" *Brown*, 608 F.3d at 734. While we accept that the Defendants might have lacked probable cause to arrest Lemieux, the complaint's allegations indicate that Lemieux was never arrested—and that he was, instead, temporarily detained during a traffic stop. *See Arizona v. Johnson*, 555 U.S. 323, 333 (2009) ("The temporary seizure of driver and passengers ordinarily continues, and remains reasonable, for the duration of the [traffic] stop."). And police officers may, in the name of officer safety, remove a person from his vehicle (even by gunpoint) and handcuff him, even during a routine traffic stop. *See United States v. Spoerke*, 568 F.3d 1236, 1248 (11th Cir. 2009) ("During a lawful traffic stop, officers also may take steps that are reasonably necessary to protect their personal safety, including requiring the driver and passengers to exit the vehicle as a matter of course." (cleaned up)); *see also United States v. Fields*, 178 F. App'x 890, 893 (11th Cir. 2006) ("An officer's action in handcuffing a defendant or securing him in a patrol car does not automatically convert a [traffic] stop into an arrest."); *Malcolm v. City of Miami Police*, 574 F. App'x 881, 883 n.3 (11th Cir. 2014) ("Neither handcuffing nor an officer's drawing his weapon necessarily converts an investigative stop into a custodial arrest." (citing *United States v. Hastamorir*, 881 F.2d 1551, 1556–57 (11th Cir. 1989))).[3] This is especially true where, as here, the Defendants allowed Lemieux and his passengers to go free at the end of the encounter "without issuing [Lemieux] a ticket or citation." *Id.* ¶ A.26; *see also Florida v. Royer*,

---

[3] Lemieux never alleges that the Defendants lacked a legal basis to conduct a routine traffic stop. *See generally* Amended Complaint.

460 U.S. 491, 500 (1983) ("[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop.").

To be clear, we agree with Lemieux that the Defendants "seized" him when they ordered him out of the car and handcuffed him. *See Royer*, 460 U.S. at 501 (holding that, during a traffic stop, "Royer was effectively seized for the purposes of the Fourth Amendment"). We also acknowledge that the Defendants' decision to search Lemieux's vehicle (and to strip search him) without probable cause (allegations that underlie his first two claims) plausibly extended this initial seizure beyond its constitutional limits. *See United States v. Boyce*, 351 F.3d 1102, 1106 (11th Cir. 2003) ("[A] traffic stop must be of a limited duration. The stop 'may not last 'any longer than necessary to process the traffic violation' unless there is articulable suspicion of other illegal activity." (quoting *Purcell*, 236 F.3d at 1277)). Here, we make clear only that the Defendants' *initial seizure* of Lemieux—in the course of initiating the traffic stop—was constitutional and did not result in a false arrest. For these reasons, we **DISMISS** Lemieux's false-arrest claim.[4]

\*       \*       \*

Having screened the Amended Complaint under 28 U.S.C. § 1915A, we hereby **ORDER AND ADJUDGE** as follows:

1.  Lemieux's illegal-vehicle-search claim against Defendants Bango, Ward, and Birch, his illegal-strip-search claim against Defendants Ward and Birch, and his illegal-seizure claim against Defendant Bango shall **PROCEED** to service.

---

[4] To the extent this claim can be read as challenging the *entire duration* of Lemieux's seizure as an illegal arrest, we exercise our discretion to dismiss this claim—albeit without prejudice—because it is duplicative of the relief he seeks in the Amended Complaint's first two claims. *See Manning v. Carnival Corp.*, 2012 WL 3962997, at *2 (S.D. Fla. Sept. 11, 2012) (Altonaga, J.) ("Duplicative claims are those that stem from identical allegations, that are decided under identical legal standards, and for which identical relief is available. To promote judicial economy, a court should dismiss claims that are duplicative of other claims." (cleaned up)).

2.  All of Lemieux's remaining claims are **DISMISSED without prejudice** for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915A(b). Lemieux may, if he wishes, file a Second Amended Complaint within twenty-one days of the Defendants being served or within twenty-one days of the Defendants serving a responsive pleading under Rule 12. *See* FED. R. CIV. P. 15(a)(1).

3.  Lemieux's motion to proceed *in forma pauperis* [ECF No. 6] is **GRANTED**. The Plaintiff shall owe the United States $350.00, which the Plaintiff must pay to the Clerk of Court as funds become available. To effectuate those payments, the agency with custody over the Plaintiff must forward these payments from the Plaintiff's prisoner account to the Clerk of Court anytime the account balance exceeds $10.00. That agency shall continue to make these payments until the Plaintiff has paid the filing fees in full. The Clerk **SHALL** send a copy of this Order to the Palm Beach County Sheriff's Office's Inmate Trust Fund Department and this Court's Financial Department.

4.  Lemieux's second motion to proceed *in forma pauperis* [ECF No. 9] is **DENIED as moot**.

5.  We will direct the U.S. Marshals Service to serve the appropriate defendants in a separate order. *See* FED. R. CIV. P. 4(c)(3).

6.  This case shall remain administratively **CLOSED**. Any party may move to reopen the case once **all of the remaining Defendants** have been served.

**DONE AND ORDERED** in the Southern District of Florida on July 23, 2024.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:    Avens Lemieux, *pro se*

12